IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WILLIE HUGGINS                                           PLAINTIFF

v.                                    CIVIL ACTION NO.: 1:10-CV-00274-GHD-DAS

UNITED STATES OF AMERICA,
USDA FOOD AND NUTRITION SERVICE                         DEFENDANT

MEMORANDUM OPINION
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court are the following: a motion to dismiss or, in the alternative, for summary judgment [9] filed by the Defendant, the United States of America (the "Defendant"); and a motion for summary judgment [11] filed by the Plaintiff, Willie Huggins (the "Plaintiff"). Because the Defendant's motion to dismiss or, in the alternative, for summary judgment [9] includes matters outside the pleadings which this Court shall not exclude, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the motion shall be considered a Rule 56 motion for summary judgment. After due consideration of the record, rules, and authorities, the Court is ready to rule.

*A. Introduction*

Congress established the federal food stamp program[1] "[t]o alleviate . . . hunger and malnutrition" and "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011. The FNS oversees the program and provides food stamps to states participating in the program, and the states then distribute the food stamps to

---

[1] Although the federal food stamp program is now known as the supplemental nutrition assistance program, throughout this opinion, the program will be referred to as the food stamp program.

1

qualified individuals and households. The FNS regional office "shall . . . disqualify a firm permanently if" the firm has engaged in the trafficking of food stamps. 7 C.F.R. § 278.6(a). "Trafficking" is defined as "the buying or selling of coupons, ATP cards[,] or other benefit instruments for cash or consideration other than eligible food . . . ." 7 C.F.R. § 271.2. Food stamp trafficking unquestionably undermines the goals of the food stamp program. *See* H.R. REP. NO. 271, 99th Cong. (1st Sess.), *reprinted in* 1985 U.S.C.C.A.N. 1103, 1260; S. REP. NO. 504, 97th Cong. (2d Sess.), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1700–02. A firm's disqualification from participation in the program "result[s] from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)." 7 CFR § 278.6(a). A retail food store or wholesale food concern that is subjected to a civil money penalty may first timely seek administrative review of the validity of the determination, and upon the final administrative determination, may timely seek judicial review of the agency determination.

The Plaintiff in the case *sub judice* owned and operated Rienzi Discount Grocery, a retail grocery store located in Rienzi, Mississippi. Rienzi Discount Grocery was authorized to accept food stamps under the food stamp program. The FNS notified the Plaintiff that Rienzi Discount Grocery was permanently disqualified from participating in the program for trafficking in food stamps in violation of the food stamp regulations, specifically, 7 C.F.R. §§ 271.2 and 278.2(a). The FNS based this disqualification on several violations of the Food Stamp Act in which the Plaintiff had accepted food stamp EBT cards as payment in exchange for ineligible merchandise. Plaintiff never sought administrative review of the permanent disqualification decision and

2

decided instead to close his grocery store business and lease the empty building to a tenant. The USDA then assessed a civil money penalty of $34,560 against the Plaintiff based on his perceived transfer of his grocery store business to the tenant in violation of the Food Stamp Act. Plaintiff now seeks judicial review of the FNS's final decision to uphold the penalty, contending that he merely leased the empty building that had previously housed his grocery store business and did not transfer ownership of his business in violation of food stamp regulations.

*B. Issues on Review*

The two issues before this Court are as follows: first, whether Plaintiff's leasing of the building that housed his former grocery store business violated the terms of Plaintiff's permanent disqualification from participation in the food stamp program per 7 U.S.C. § 2021(e)(1) and 7 C.F.R. § 278.6(f)(2); and second, whether if Plaintiff violated the terms of his permanent disqualification, the civil money penalty assessed against Plaintiff was in accordance with the guidelines of 7 C.F.R. § 278.6(g).

*C. Standard of Review*

A retail food store or wholesale food concern that is subjected to a civil money penalty under 7 U.S.C. § 2021 may first timely seek administrative review of the validity of the determination, and upon the final administrative determination, may timely seek judicial review of the agency determination pursuant to 7 U.S.C. § 2023(a)(13). Such suit "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). *De novo* review is broader than the review standard under the Administrative Procedure Act. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). The Administrative Procedure Act provides in pertinent part as follows: "To the extent necessary to the decision and when presented, the reviewing court shall decide all relevant

3

questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. *De novo* review of an agency decision encompasses more, "requir[ing] the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence." *Modica*, 518 F.2d at 376. "The court must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously dealt with in the administrative proceedings." *Ruhee M., Inc. v. United States*, No. H-05-1547, 2006 WL 1291356, at *2 (S.D. Tex. May 5, 2006) (citing *Modica*, 518 F.2d at 376). The aggrieved party bears the burden of establishing the invalidity of the administrative action by a preponderance of the evidence. *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir. 1975). The aggrieved party "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may offer any evidence available to support its action, whether or not in the administrative record." *Id.* at 1012. "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023(a)(16).

A retail food store or wholesale food concern that is subjected to a civil money penalty under 7 U.S.C. § 2021 may similarly first seek timely administrative review and then judicial review of whether the civil money penalty was in accordance with the applicable regulations promulgated under the Food Stamp Act. Judicial review of a sanction imposed under the Food Stamp Act is limited to the determination of whether the sanction is valid; a sanction is valid as long as it is not "arbitrary and capricious," that is, "unwarranted in law or without justification in fact." *See Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–89, 93 S. Ct. 1455, 36 L.

4

Ed. 2d 142 (1973); *Goodman v. United States*, 518 F.2d 505, 511–12 (5th Cir. 1975). *See also Estremera v. United States*, 442 F.3d 580, 585 (7th Cir. 2006); *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984) (citing *Kulkin v. Gergland*, 626 F.2d 181, 184 (1st Cir. 1980)); *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) (en banc).[2] The district court decides only whether the agency's interpretation was plainly erroneous or inconsistent with its own regulations; otherwise, the agency's construction of its own regulations is controlling. *Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1160 (5th Cir. 1992).

"Cases arising under the Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.*, may be resolved in the district court by summary judgment where there are no genuine issues of material fact." *Cullen Drive-In Grocery v. Block*, 778 F.2d 1141, 1142 (5th Cir. 1985) (citing *Modica*, 518 F.2d at 376). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under

---

[2] However, the court may conduct *de novo* review of facts that are primarily relevant to the imposition of sanctions. *See, e.g., Mohamed v. USDA Food and Nutrition*, No. 1:05-CV-00657-SMS, 2009 WL 2986960, at *2 (E.D. Cal. Sept. 16, 2009).

Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment; instead, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1985). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). It is well settled in the Fifth Circuit that "the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' " *Little*, 37 F.3d at 1075 (internal citations omitted).

### D. Factual and Procedural Background

On November 9, 2004, the USDA sent a notice to the Plaintiff stating that his grocery store, Rienzi Discount Grocery, was suspected of violating food stamp regulations based on compiled evidence, including records of the store's EBT transactions for April 2004 through August 2004 that revealed "a clear and repetitive pattern of unusual, irregular, and/or inexplicable [food stamp program] activity for [the Plaintiff's] firm." *See* Nov. 9, 2004 USDA Letter, attached to Pl.'s Compl. [1], at 6. An FNS field officer visited the Plaintiff's store and

reported that the store stocked grocery items, as well as "paper products, pet food, household cleaning supplies[,] and health/beauty aids. . . . That visit also indicated empty shelves in [the] store." *Id.* The field officer further reported the following suspicious activity that occurred between April 2004 and August 2004: an inordinate number of "high[-]dollar" EBT transactions that appeared to be unsupported by the store's eligible food stock; several round-dollar transactions; "an inordinate number of all EBT transactions . . . were transactions in the $65 or multiples of $65 range, which coincides with the dollar amount of a paper coupon booklet"; and several food stamp EBT transactions that "depleted the majority or all of the recipient's monthly food stamp benefit amounts in one transaction." *Id.* at 9–10. Plaintiff's attorney wrote a letter to the FNS disputing the charges.

On November 30, 2004, the USDA notified the Plaintiff that he was permanently disqualified from participating in the food stamp program based on the agency's review of the information and evidence. The USDA further informed Plaintiff that "[u]nder Section 278.6(f)(2) of the regulations, you will be subject to a civil money penalty should you sell or transfer ownership of your retail food business" that would be calculated "using the method found in Section 278.6(g) of the regulations." Nov. 30, 2004 USDA Letter to Pl., attached to Pl.'s Compl. [1], at 12. Plaintiff elected not to submit a request for administrative review of his permanent disqualification, but instead to operate his business long enough to sell his remaining inventory. Plaintiff did not engage in any further food stamp transactions. With his inventory depleted, Plaintiff then proceeded to dissolve his business. Plaintiff is the owner in fee simple of the building that formerly housed Rienzi Discount Grocery. *See* Warranty Deed, attached to Pl.'s Mem. Br. Supp. MSJ [12], at 17–18. Plaintiff entered into a lease agreement in which he agreed to lease his building to his relative, Donna Huggins, for $200 per month rent. Donna

7

Huggins currently leases the building and operates a grocery store, D & J Grocery, in the building.

On July 11, 2005, the USDA sent Plaintiff notice that he had violated 7 C.F.R. § 278.6(f)(2) by selling or transferring ownership of Rienzi Discount Grocery during his permanent disqualification from participating in the food stamp program and that a lump sum civil money penalty of $34,560 would be assessed against him pursuant to the statute. Plaintiff petitioned for administrative review of this determination, contending that the lease of his building to his relative did not constitute a transfer under 7 C.F.R. § 278.6(f)(2). Plaintiff further contended that he had fully complied with all USDA requirements stemming from the permanent disqualification, including sending in the machine that processed food stamp transactions and not engaging in further food stamp transactions. Plaintiff maintained that he was at a loss to understand how there would be any violation of this matter, as his relative had never operated Rienzi Discount Grocery in any manner and in furtherance of her own business, purchased her own inventory, procured her own sales tax number, and opened her own business checking account. Accordingly, Plaintiff requested that the civil money penalties be waived.

On October 6, 2010, the USDA issued a final agency decision upholding the civil money penalty, stating that "[n]either the Food and Nutrition Act of 2008 nor its implementing regulations allow for factoring in whether the new owner assumed the old business or independently established her own identity in a store transfer" in such a determination and that based on the lease agreement and other documentation, Plaintiff had transferred his business in violation of 7 C.F.R. § 278.6(f)(2). Final Agency Decision, attached to Pl.'s Compl. [1], at 27. Plaintiff now seeks judicial review of the USDA's final decision pursuant to 7 U.S.C. § 2023(a)(13). Plaintiff requests that this Court overturn the agency findings and penalty and

award him attorney's fees and court costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412. Magistrate Judge Davis entered an Order [8] assigning this case to the administrative track and directing the parties to file cross motions for summary judgment. The parties have done so and present the following arguments therein.

### E. *Arguments on Review*

The Defendant maintains in its motion for summary judgment [9] that the FNS properly assessed the civil money penalty against the Plaintiff. Donald M. Horne, the officer-in-charge of the Compliance Management Center West for the Southeast Region of the FNS, testifies by declaration that a retailer found in violation of FNS regulations is subject to a civil money penalty if said retailer sells or otherwise transfers the ownership of the retail food store subject to that disqualification and that the agency makes such a determination "without regard to whether the transfer of ownership is a legitimate 'arms length' transaction on its face." Horne Decl. [9-1] ¶ 3. Horne further states that "leasing a disqualified retail store to another party or entity . . . is a transfer of ownership just as much as an outright sale of said retail food store would be." *Id.* ¶ 4. Finally, Horne states that the amount of the civil money penalty was calculated in accordance with FNS regulations. *Id.* ¶¶ 5, 6. Defendant attaches to its motion a case analysis guide sheet containing a list of items the Plaintiff submitted in support of his position, among them a letter submitted by Plaintiff's tax preparer to the agency stating that Plaintiff neither sold nor transferred his business, but closed the business on or about March 15, 2005; a letter submitted by Plaintiff's bank stating that Plaintiff closed his business bank account on December 21, 2004; a tax permit verifying that Plaintiff was receiving $200 in monthly rent from the tenant for the building under the lease agreement; and a letter submitted by the mayor of the City of Reinzi attesting that Plaintiff closed his store due to ill health. *See* Case Analysis Guide Sheet [9-2].

9

The Defendant concedes that "Plaintiff never challenged his permanent disqualification as owner and operator of Rienzi Discount Grocery from the [food stamp program]. He simply closed his store, disposed of his inventory[,] and rented the building that was once Rienzi Discount Grocery to Donna Huggins, a relative, who opened another retail food store called D & J Discount Grocery[, which] rental action triggered the violation of 7 C.F.R. § 278.6(f)(2) . . . . " Def.'s Mem. Br. Supp. Mot. to Dismiss/SJ [10] at 6–7. The Defendant contends that based solely on the lease of the Plaintiff's building to his relative, a transfer of business ownership occurred. The Defendant maintains that the FNS was not allowed any discretion on either the imposition or amount of the civil money penalty, and that the same were in accordance with FNS guidelines and regulations.

The Plaintiff argues in response [15] that the USDA has not offered sufficient competent evidence to create a genuine issue of material fact, and that the Plaintiff neither violated, nor attempted to circumvent, any USDA regulation. The Plaintiff additionally has filed a motion for summary judgment [11] and brief in support [12] in which he contends that he neither sold nor transferred his business and that the USDA is stretching its interpretation of in 7 C.F.R. § 278.6(f)(2) beyond its intent. The Plaintiff maintains that he "close[d] his business, empt[ied] it of equipment[,] and sold the entire inventory that was in stock, leaving only the shell of the building." Pl.'s Mem. Br. Supp. MSJ [11] at 6. The Plaintiff attached to his motion various documentation supporting his position that he had also submitted to the FNS. First American National Bank submitted a letter to the USDA in support of the Plaintiff stating that "Rienzi Discount Grocery closed their account with [the bank] on 12/21/04. [The bank] does not have an existing account with Rienzi Discount Grocery at this time." Bank Letter, attached to Pl.'s Mem. Br. Supp. MSJ [11], at 30, and attached to Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [16],

at 7. The Plaintiff's tax preparer submitted a letter stating that the Plaintiff neither sold nor transferred his business, but instead closed his business on or around March 15, 2005 in accordance with IRS guidelines for dissolving a business, after which time "no other business was done by the store." Tax Preparer Letter, attached to Pl.'s Mem. Br. Supp. MSJ [11], at 32 and attached to Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [16], at 8. The tax preparer stated that she would prepare the Plaintiff's taxes in January 2006 and file him out of business as of March 15, 2005. *Id.* The supporting documentation shows that the building stood vacant for some time before the Plaintiff leased the building to his relative. The Plaintiff maintains, and the lease agreement supports, that the Plaintiff received monthly rent of $200, and nothing else, as payment. A tax permit also was provided that verified this information. Finally, the mayor of the City of Reinzi submitted a letter stating that the Plaintiff had "operated a small store" in Rienzi but that the mayor could "personally attest to the fact that this store was closed on or about March 15, 2005, as [the Plaintiff and his wife] were both in extremely bad health." Mayor Letter, attached to Pl.'s Mem. Br. Supp. MSJ [11], at 31, and attached to Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [16], at 6. The Plaintiff argues that merely leasing the empty building that previously housed his business does not constitute a transfer of ownership under the statute, and that under the Defendant's interpretation of 7 C.F.R. § 278.6(f)(2), to be certain of no violation, the Plaintiff "must bulldoze the building leaving only bare ground and even then it may be questionable." *Id.* at 6–7. He further argues that "[n]ot allowing a property owner to lease a building would rob the land of any economical beneficial use" in violation of the United States Constitution. Pl.'s Mem. Br. Supp. MSJ [12] at 8. Plaintiff further maintains that upon entering into the lease agreement, the tenant Donna Huggins purchased her own inventory, set up her own tax identification number, and may have even become a food stamp program

11

participating herself. The Plaintiff points out that 7 C.F.R. § 278.6 provides in pertinent part: "A buyer or transferee (other than a bona fide buyer or transferee) may not be authorized to accept or redeem coupons and may not accept or redeem coupons until the Secretary receives full payment of any penalty imposed on such store or concern." 7 C.F.R. § 278.6(f)(4). Thus, the Plaintiff maintains that if Donna Huggins were indeed a transferee, as the Defendant maintains, then Donna Huggins should not have been authorized to participate in the federal food stamp program. By the same token, if Donna Huggins participated in the federal food stamp program following her lease of the property, the Plaintiff maintains that she could not have been considered a transferee by the Government. The Plaintiff maintains that it was his belief "that upon granting Mrs. Donna Huggins authorization to participate in [the food stamp program] the Defendant also recognized that she had opened her own independent food retail store." Pl.'s Mem. Br. Supp. MSJ [12] at 7. The Plaintiff states that his discount grocery had been the only business of its kind serving Rienzi and the surrounding rural areas; thus, "[i]t is only logical that the subsequent tenant of the same building would open her own discount grocery [store] at the same location." *Id.*

## F. Discussion

The Court finds this case to be unique in that it is not a challenge to a store's disqualification from the food stamp program.[3] The case similarly does not involve a store

---

[3] *See, e.g., Arnold v. United States*, 180 F.3d 265 (5th Cir. 1999) (per curiam) (affirming district court's grant of summary judgment in favor of United States on Plaintiff's permanent disqualification from participating in food stamp program where Plaintiff admitted that transactions violated Food Stamp Act but denied involvement in food-stamps-for-cash transactions); *Bordelon v. Block*, 810 F.2d 468 (5th Cir. 1986) (per curiam) (affirming district court's grant of summary judgment in favor of United States on Plaintiff's permanent disqualification from participating in the food stamp program where Plaintiff admitted upon judicial review in district court cash-for-food-stamps transaction but claimed belief that he was legally purchasing food stamps from another retailer); *Ramirez v. Sec'y of Agric.*, 712 F.2d 150 (5th Cir. 1983) (reversing district court's finding that FNS's decision to disqualify a Texas grocery store from participating in food stamp program for six months was arbitrary and capricious where owner claimed such transactions occurred due to accident or customer threats, and reinstating FNS's order); *Hough v. USDA*, 707 F.2d 866 (5th Cir. 1983) (per curiam) (affirming district court's grant of summary judgment in favor

12

owner's futile attempt to revive his retail business from the ashes of permanent disqualification.[4] Instead, this case involves a challenge to the FNS's interpretation of the term "transfer" as it appears in 7 U.S.C. § 2021(e)(1) and the corresponding regulation in 7 C.F.R. § 278.6(f)(2). When this Court is faced with such a determination, it notes that

> [f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (footnotes omitted). Thus, first the Court must determine whether Congress has directly spoken to the precise question at issue. This, logically, requires an examination of the relevant statutory text, which provides in pertinent part:

> In the event any retail food store or wholesale food concern that has been disqualified under subsection (a) of this section is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern shall be subjected to a civil penalty in an amount established by the Secretary through regulations to reflect that portion of the disqualification period that has not yet expired.

7 U.S.C. § 2021(e)(1) (emphasis added); *see* 7 C.F.R. § 278.6(f)(2).

---

of FNS on Plaintiff's three-year suspension from participating in food stamp program for repeated violative transactions despite warnings); *Otto v. Block*, 693 F.2d 472 (5th Cir. 1982) (reversing district court's finding that FNS's decision to disqualify Texas grocery store from participating in food stamp program for one year was arbitrary and capricious where store owner sold ineligible items for food stamps and ordered the penalty reduced to a letter of warning, and reinstating FNS's order); *Bruno's, Inc. v. United States*, 624 F.2d 592 (5th Cir. 1980) (affirming district court's upholding of FNS's ruling that violative transactions had taken place but that imposed sixty-day suspension was arbitrary and capricious).

[4] *See, e.g., Khan v. United States*, No. H-05-0947, 2006 WL 3147331 (S.D. Tex. Oct. 31, 2006).

It is undisputed that Rienzi Discount Grocery was permanently disqualified from participating in the food stamp program. The parties likewise agree that the business was not sold to a purchaser. What is disputed is whether the "retail food store or wholesale food concern that [had] been disqualified . . . or the ownership thereof [was] <u>otherwise transferred</u> to a . . . transferee" by the leasing of the empty building that once housed the building to a tenant in exchange for monthly rent. *See id.* (emphasis added). No definition of "transfer" is provided in the statute, nor is the term further explained in the statute. The legislative history reveals Congress's concern that a store owner permanently disqualified from participating in the Food stamp program would <u>sell</u> the retail food store or wholesale food concern to a **buyer** in an attempt to evade disqualification. *See* S. REP. NO. 99-145 at 1705 (1985) ("Subject retail food stores and wholesale food concerns that are sold during a disqualification period to a civil money penalty and prohibit the buyer of the store or concern from accepting food stamps until the money penalty is fully paid if the buyer had actual or constructive notice of the penalty when the store or concern was sold."); *see also* H.R. REP. NO. 99-271, pt. 1 (1985). This is the extent of the statutory language and legislative history with respect to the specific issue. The Court determines that Congress has not directly addressed the precise question at issue,[5] but has evinced a concern focused on the sale of a business found in violation of the statute.

The Court must not simply impose its own construction on the statute, but determine whether the USDA's determination is based on a permissible construction of the statute. *See Chevron, U.S.A., Inc.*, 467 U.S. at 843, 104 S. Ct. 2778. In the instant case, the FNS has interpreted the statutory text at issue in its final opinion and has cited no previous FNS decision in which the term "transfer" was interpreted by the FNS. The FNS does state that its

---

[5] *See In re Abdelaziz v. United States*, 837 F.2d 95, 98 (2d Cir. 1988) ("The statute is fraught with ambiguities, . . . particularly with regard to multistore ownership situations or passive investors.").

14

interpretation of the term "transfer" coincides with FNS policy. The United States Supreme Court has stated: "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. . . . Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade,' *ibid.*" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (U.S. 2000) (emphasis added). Because the FNS backs up its interpretation of the term "transfer" with its own policy, this Court gives the interpretation respect, but only to the extent the interpretation is persuasive. For guidance, the Court has examined all cases in which the USDA has made a determination based on its interpretation of the relevant statutory text.

In *Estremera v. United States*, 442 F.3d 580 (7th Cir. 2006), the FNS had assessed a civil money penalty against an individual determined to have sold his business following his permanent disqualification from participating in the food stamp program. 442 F.3d at 586. The FNS based this determination on ample evidence of the sale, including (1) a consent action agreement signed by the store owner to sell the store to a purchaser; (2) a bill of sale for the store; (3) a real estate closing statement confirming the sale; (4) an affidavit attesting to the sale of the store; (5) a mortgage note signed by the purchaser; (6) a lease between the store owner and the purchaser; and (7) the store owner's signed admission that she had sold the store. *See id.* Although the store owner challenged the civil money penalty, contending, *inter alia*, that she had not sold ownership of the business, the sale was never completed, and the would-be purchaser had never intended to follow through on the sale, the civil money penalty assessed by the FNS

15

against the store owner was upheld by the district court and then by the Seventh Circuit. *Id.* at 583–84. Similarly, in *Thakor v. United States*, 55 F. Supp. 2d 1103 (D. Nev. 1999), the FNS had assessed a civil money penalty against a store owner the FNS determined sold his business after being found in permanent disqualification of participating in the food stamp program. 55 F. Supp. 2d at 1105. This determination was based on such evidence as the escrow instructions, which declared that the store owner was "transferring all the property, materials, supplies, merchandise, equipment, or other inventory of [his store], along with the name, goodwill, tenant improvements and a covenant not to compete, in exchange for a total consideration of $30,000." *Id.* at 1106 (internal quotation marks omitted).

In several cases, store owners have challenged the amount or constitutionality of the civil money penalty itself, but have conceded that they sold or transferred their business following permanent disqualification from participating in the food stamp program in violation of the statute. *See, e.g., Mich. Express, Inc. v. United States*, 374 F.3d 424, 426 (6th Cir. 2004); *Garmo v. United States*, No. 10–CV–2185–JM–BLM, 2012 WL 162358, at *1 (S.D. Cal. Jan. 18, 2012); *Anton v. U.S.*, 225 F. Supp. 2d 770, 774 (E.D. Mich. 2002). In still other cases, store owners have conceded the details of such sale or transfer of the business. For example, in *Objio v. United States*, 113 F. Supp. 2d 204 (D. Mass. 2000), the case principally relied upon by Defendant in support of its position, the store owner had undisputedly "sold the assets of her store, including the inventory, fixtures, and equipment," following her store's permanent disqualification from participation in the food stamp program. 113 F. Supp. 2d at 207. *See also United States v. Lancman*, No. Civ.4–95–880JRT/RLE, 1998 WL 315346, at *1 (D. Minn. Jan. 20, 1998) (individual not disputing that he transferred all rights and obligations under store lease, grocery store fixtures, and other equipment, to a purchaser in exchange for $25,000).

16

In all cases mentioned above, the FNS imposed civil money penalties under the statute either where confronted with evidence supporting the store owner's sale or transfer of ownership in his business or where confronted with the store owner's admission that he or she had, in fact, sold or transferred ownership in his business. In the case *sub judice*, this Court is confronted with an entirely different situation.

The final agency decision of the USDA in this case provides that "[a] copy of a lease agreement, contained in the FIELD OFFICE file, indicates that RIENZI then leased the building that housed the business to Donna Huggins on April 1, 2005. **Since the building was transferred** subsequent to the receipt of the November 30, 2004 letter of disqualification, the FIELD OFFICE informed RIENZI, in a letter dated July 11, 2005, that a [cash money penalty] . . . was being assessed against the former owner of RIENZI. . . . [T]he simple truth is that the retail food business at RIENZI's current address was now being run by another owner. **While I understand that RIENZI did not sell to the new owner the store name or inventory, the fact that there is a lease agreement for a new owner at the same location indicates that this is still a legitimate store transfer** subject to a [cash money penalty] under the [Food stamp program] rules." Final Agency Decision, USDA, FNS, attached to Pl.'s Compl. [1] at 24 (emphasis added).

This Court finds that the Plaintiff's leasing of his own empty building that had previously housed his grocery store business to his relative did not, in and of itself, constitute a "transfer" under the statute. Although this Court accords any administrative agency deference in its determinations, the Court stops short of upholding an agency decision that does not comport with that agency's prior rulings and is not supported by evidence. The imposition of the civil money penalty in this case would not be arbitrary and capricious if it were assessed based on an actual

17

"transfer" of ownership of the business. When an agency's action adheres to the relevant guidelines, it cannot be arbitrary and capricious, and the civil money penalty follows the FNS guidelines for such a penalty. However, no penalty should have been imposed on the Plaintiff in this case. In light of the applicable law, the Court finds that the FNS's determination that Plaintiff "transferred" his business is unsupported by the factual evidence in this case. Because Plaintiff did not transfer his business as contemplated under the FNS regulations, the Court finds that the imposition of the civil money penalty should be overturned, as there is no genuine dispute of material fact remaining in the case.

*G. Conclusion*

In sum, the Defendant's motion to dismiss or, in the alternative, for summary judgment [9] shall be DENIED. Plaintiff's motion for summary judgment [11] shall be GRANTED, insofar as it relates to the overturning of the civil money penalty against Plaintiff.

A separate order in accordance with this opinion shall issue this day.

THIS, the 13th day of March, 2012.

_____
SENIOR JUDGE